## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SHELLY P.,

        *Plaintiff,*

*v.*

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

        *Defendant.*

_____/

Case No. 4:23-cv-11228

Shalina D. Kumar
United States District Judge

Patricia T. Morris
United States Magistrate Judge

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 9, 11)

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff Shelly P.'s Motion for Summary Judgment be **DENIED** (ECF No. 9), Defendant's Motion for Summary Judgment be **GRANTED** (ECF No. 11), and the Commissioner's final decision be **AFFIRMED**.

## II.   REPORT

### A.   Introduction and Procedural History

Plaintiff's application for Disability Insurance Benefits ("DIB") was filed on January 11, 2013.  (ECF No. 4-1, PageID.152).  Plaintiff alleged she became

disabled on June 1, 2011.[1] (*Id.*). The Commissioner denied these claims initially on March 11, 2013. (*Id.* at PageID.45, 90). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which took place on May 14, 2014. (*Id.* at PageID.45, 57, 119). The ALJ issued a decision on May 21, 2014 finding that Plaintiff was not disabled. (*Id.* at PageID.53). The Appeals Council denied review on July 8, 2015. (*Id.* at PageID.405). Plaintiff then successfully sought judicial review and the case was remanded. (*Id.* at PageID.422–55).

Under direction of the Appeals Council, the ALJ was instructed to fully evaluate the opinion of certain agency physicians and another hearing was held on March 16, 2017. (*Id.* at PageID.380, 460–63, 1061–85). The ALJ issued another decision on May 31, 2017 finding that Plaintiff was not disabled. (*Id.* at PageID.372, 1018). The Appeals Council denied review, Plaintiff again successfully sought judicial review, and the case was remanded. (*Id.* at PageID.1026, 1033–56). Under direction of the Appeals Council, the ALJ was instructed to again evaluate Plaintiff's claim. (*Id.* at PageID.1057–59).

A third hearing was held on October 2, 2022. (*Id.* at PageID.970). On November 8, 2022, the ALJ issued another decision finding that Plaintiff was not disabled, and the Appeals Council again denied review. (*Id.* at PageID.930, 940,

---

[1] Plaintiff submitted a motion to amend her alleged onset date from June 1, 2011 to January 31, 2013. (ECF No. 4-1, PageID.172).

962).  Plaintiff sought judicial review on the latest decision on May 24, 2023.  (ECF No. 1).  The parties have filed cross-motions for summary judgment and briefing is complete.  (ECF Nos. 9, 11).

### B.  Standard of Review

The Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).  "[T]he threshold for such evidentiary sufficiency is not high. . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility."  *Cutlip v. Sec'y of Health & Human Servs.*, 25

3

F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C. Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 3336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 214 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

5

### D.  ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff

was not disabled.  (ECF No. 4-1, PageID.962).  At **Step One**, the ALJ found Plaintiff

had not engaged in substantial gainful activity ("SGA") from her alleged onset date

of June 1, 2011, through her date last insured of December 31, 2016.  (ECF No. 4-

1, PageID.946).  At **Step Two**, the ALJ found that through the date last insured,

Plaintiff had the severe impairment of fibromyalgia.  (*Id.* at PageID.946).  At **Step**

**Three**, the ALJ found that the impairment did not meet or medically equal the

severity of one of the listed impairments in 20 CFR Part 404.1520(d), 404.1525 and

404.1526.  (*Id.* at PageID.951).

Next, the ALJ found that Plaintiff had the residual functional capacity

("RFC") to

> [P]erform light work as defined in 20 CFR 404.1567(b),
> except: she can occasionally operate foot controls,
> occasionally climb ramps and stairs, never climb ladders,
> ropes or scaffolds; occasionally balance, stoop, kneel,
> crouch and crawl; avoid concentrated exposure to extreme
> heat and cold, to wetness, humidity and vibration, and to
> fumes, odors, dust, etc.; avoid all exposure to unprotected
> heights and heavy moving machinery; stand and walk four
> hours in an eight-hour day; may alternate between sitting
> and standing every 15 minutes.

(*Id.* at PageID.952).  At **Step Four**, the ALJ found that Plaintiff was unable to

perform any past relevant work.  (*Id.* at PageID.960).  The ALJ found that even

though Plaintiff was considered to be an individual closely approaching advanced

6

age, this did not alter the conclusion that she was not disabled under Medical-Vocational Rule 202.20 as she was not found to have been limited to sedentary work during the relevant time period. (*Id.*). At **Step Five**, the ALJ found jobs which Plaintiff could perform existed in significant numbers in the national economy (e.g., mail clerk, office helper, and collator operator). (*Id.*). Accordingly, the ALJ concluded that Plaintiff was not disabled. (*Id.* at PageID.961).

### E. Administrative Record

#### 1. Overview of Medical Evidence

##### a. Treatment Notes

Plaintiff's November to December 2011 Holy Family Clinic, PLC medical notes indicate she was suffering from fatigue and headaches every day. (ECF No. 4-1, PageID.237). Her legs and feet were very stiff, she experienced pain in hips, legs, and feet. (*Id.*). She also experienced bouts of dizziness, feelings of lightheaded, and myalgia. (*Id.*). And she had fibromyalgia. (*Id.*).

Doctor Angela Malani's, Plaintiff's treating rheumatologist, December 2011 notes state that

> Even when [P]laintiff wakes up in the morning, she feels tired, as though she hasn't slept at all. She has headaches on a daily basis. She feels very stiff in her legs during the day and first thing in the morning. She often feels dizzy or lightheaded and has generalized weakness. She does note trouble concentrating and memory problems. Her legs often feel restless, especially at night. She denies any rashes. She denies any seizures, strokes or kidney disease.

> She reports recently she saw a podiatrist and has been told she has tears in her Achilles tendons.  She may have some Raynaud's, as she does report whitish discoloration in her fingers that is present with the cold weather.  She does have some pain in her lower back and hips.  She has tried Tylenol, Motrin, and Excedrin for headaches.

(*Id.* at PageID.299).

Doctor Malani next saw Plaintiff on January 2, 2013.  (*Id.* at PageID.293). Her treatment notes indicate Plaintiff reported exercise intolerance, muscle aches, muscle weakness, joint pain, morning stiffness, weakness, numbness, dizziness, frequent or severe headaches, paresthesia, sleep disturbances, anxiety, restless sleep, and fatigue.  (*Id.* at PageID.294).  Her motor strength, tone and extremity movements were normal.  (*Id.* at PageID.294).  There were no contractures, malignment, tenderness, synovitis, or body abnormalities.  (*Id.*).  Plaintiff requested to be prescribed a medication that she could take on an "as needed" basis as she did not like being on medication.  (*Id.*).  In March 2012, Plaintiff indicated to Doctor Malini during a visit that she did not notice any difference in pain while taking Elavil and would "like to focus on managing her fibromyalgia through ways other than medication."  (*Id.* at PageID.297).

Doctor Malani submitted a Medical Source Statement dated January 2, 2013. (*Id.* at PageID.319–323).  Doctor Malani identified 13 tender points and the following symptoms: allodynia (hypersensitivity to touch), fatigue, chronic widespread pain, sleep disturbance, muscle weakness, joint stiffness, muscle

8

spasms, morning stiffness, Irritable Bowel Syndrome, frequent severe headaches, cognitive dysfunction, numbness and tingling, dizziness, GERD, and anxiety. (*Id.* at PageID.319). Plaintiff experienced bilateral pain in her lumbosacral spine, cervical spine, thoracic spine, shoulders, arms, hands/fingers, hips, legs, and knees/ankles/feet. (*Id.* at PageID.320). She experienced the pain daily and described it as chronic. (*Id.*). The pain was worse when she performed certain activities and it limited her ability to function. (*Id.*). The factors which precipitated the pain included changing weather, movement/overuse, hormonal changes, stress, and sleep problems. (*Id.*). Plaintiff can only walk three to four blocks, sit for 15 minutes at a time for no more than two hours, and stand for five minutes at a time for no more than two hours. (*Id.*). Further, she would need a job that permits her to shift positions at will from sitting, standing or walking. (*Id.*). During an eight-hour workday, Plaintiff needs the option to take unscheduled breaks and walk for five minutes every hour. (*Id.* at PageID.321). In a work environment, Plaintiff can (i) only occasionally lift and carry less than 10 pounds; (ii) rarely twist, stoop (bend), crouch/squat, climb ladders, or climb stairs; and (iii) rarely look down (sustained flexion of neck), turn her head right or left, look up, and hold her head in a static position. (*Id.*). Plaintiff will be off task at least 25% of the time, and absent from work more than four days per month. (*Id.* at PageID.322).

In April 2014, Doctor Alexander Lund, D.O. assessed Plaintiff.  (ECF No. 4-1, PageID.324).  Doctor Lund surmised Plaintiff can frequently lift or carry up to 10 pounds, occasionally lift 11 to 20 pounds, and never lift over 20 pounds.  (*Id.* at PageID.329).  Further, she can sit for 30 minutes, stand for 10 minutes, and walk for 30 minutes uninterrupted.  (*Id.* at PageID.330).  Over the course of an eight-hour workday, she can sit for a total of four hours, stand for a total of an hour, and walk for a total of three hours.  (*Id.*).

In October 2015, Doctor Scott Lazzara examined Plaintiff.  (*Id.* at PageID.764).  His treatment notes indicate the reflexes of Plaintiff's affected extremities were  normal.  (*Id.* at PageID.765).  The same month, she was seen by Doctor James R. Gramprie who noted that she was no longer seeing Doctor Malani for her fibromyalgia.  (*Id.* at PageID.800).  She had been advised to "get some exercise," and informed Doctor Gramprie that every day she walks her dog for about a mile but cannot walk any further "because of her worsening pain."  (*Id.* at PageID.800).

### b.  Plaintiff's Function Report

In her function report, Plaintiff indicated that some days she is unable to complete any tasks while on other days she is able to do laundry, prepare meals, or take short walks.  (ECF No. 4-1, PageID.680–81).  She is able to prepare meals a few times a week but avoids preparing complicated dishes.  (*Id.* at PageID.681).  She

is also able to do some light cleaning (e.g., dusting).  (*Id.* at PageID.681).  Some days she cares for her husband and daughter, and on other days her family helps her complete housework.  (*Id.* at PageID.680).

Plaintiff will usually walk, drive or ride in a car when traveling.  (*Id.* at PageID.682).  She typically shops for necessities online or in the stores.  (*Id*).  She is able to pay bills, count change, handle a savings account, and use a checkbook/money orders.  (*Id.*).  Her main hobby is watching television.  (*Id.* at PageID.683).  She does not go out very often and typically her parents will visit her at home.  (*Id.*).

Plaintiff's illness affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs.  It also affects her (i) memory, (ii) ability to complete tasks, (iii) concentration, and (iv) ability to use her hands.  (*Id.* at PageID.684).  She can only walk for a few blocks before needing to rest for 10 minutes before resuming.  (*Id.*).

## 2.  Overview of Hearing Testimony

### a.  Plaintiff's Testimony

Prior to becoming disabled, Plaintiff worked at Martinrea Inc., auto supplier, where she did "manufacturing" of "piece rate parts."  (ECF No. 4-1, PageID.227, 982).  In this position, she would lift 30 pounds at most.  (*Id.* at PageID.983).  Towards the end of her tenure, she suffered from headaches and pain that were

11

affecting her back and feet as well as tendon tears in her Achilles and plantar fasciitis. (*Id.* at PageID.983–84). Ultimately, she was dismissed from the job. (*Id.* at PageID.984). Prior to this position, she worked on the smoke alarm assembly line at Faraday Inc. (*Id.* at PageID.983). In this role, she was not required to lift heavy objects. (*Id.*).

Plaintiff testified that her daughter, who suffers from a chronic disease, helps her complete tasks around the home (e.g., laundry). (ECF No. 4-1, PageID.980–81, 992–93). She was unable to complete a number of household chores (e.g., washing dishes, mopping, vacuuming, etc.) because she was unable to stand in one spot for an extended period of time. (*Id.* at PageID.992). She was also able to cook and would typically prepare frozen meals but occasionally prepared meals from scratch. (*Id.* at PageID.992).

Plaintiff testified that during the relevant time period she would drive herself around twice a week to see her parents. (*Id.* at PageID.981–82, 93). And while she was able to go grocery shopping, either her husband or daughter would have to accompany her and "do all the work." (*Id.* at PageID.993). While she does have a dog, her husband carried the load of carrying for her. (*Id.* at PageID.991–92). She had no issues with performing personal care (e.g., bathing, washing her hair, and getting dressed). (*Id.* at PageID.990).

A typical day for Plaintiff entailed of "wak[ing] up and try[ing] to get through [the] day." (*Id.* at PageID.994). She could only sit for about 30 minutes at a time. (*Id.* at PageID.994). And with her joint pain she was unable to sit in one position for an extended period of time, and needed the ability to alternate between sitting and standing. (*Id.* at PageID.986). Further, she suffered from daily headaches and chronic fatigue. (*Id.* at PageID.986). She did not have hobbies at that time, and did not go on vacation or attend any weekly meetings or events (e.g., church). (*Id.* at PageID.994).

### b. Vocational Expert's Testimony

Melanie Frye, Vocational Expert ("VE"), testified during Plaintiff's hearing. She testified that Plaintiff's previous positions qualified as follows:

- Motor Vehicle Assembler – DOT Code 806.684-010, SVP of 2, unskilled, generally performed at medium physical demand level, and performed at medium by Plaintiff.

- Production Assembler – DOT Code 706.687-010, SVP of 2, unskilled, generally performed at light physical demand level, and performed at light by Plaintiff.

(ECF No. 4-1, PageID.997).

After collecting this information from the VE, the ALJ presented the VE with the following hypothetical:

> Assume an individual with the claimant's age, education and experience has the residual functional capacity for light work, can occasionally operate foot controls, occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, occasionally balance, stoop, kneel, crouch and crawl, avoid concentrated exposure to extreme heat and cold as well as to wetness, humidity and vibration, occasional exposure - - or avoid concentrated exposure to fumes, odors, dust, et cetera, avoid all exposure to unprotected heights and heavy moving machinery. Would the individual be able to perform the past work?

(*Id.* at PageID.998). The VE testified that such a person would be able to perform the position of production assembler both as generally performed and actually performed by Plaintiff. (*Id.* at PageID.998). In addition, such an individual would be able to perform the following occupations:

- Marker – DOT Code 209.587-0.34, SVP of 2, generally performed at light physical demand level with approximately 133,000 positions available nationally.

- Cashier – DOT Code 211.462-010, SVP 2, generally performed at light physical demand level with approximately 380,000 positions available nationally.

- Mail Clerk – DOT Code 209.687-026, generally performed at a light physical demand level with approximately 30,000 positions available nationally.

(*Id.* at PageID.998).

14

The ALJ then altered the original hypothetical and included an additional condition of standing and walking for only four hours a day.  The VE testified that such an individual would not be able to perform Plaintiff's past work.  (*Id.* at PageID.999).  However, the hypothetical person would be able to perform the job of mail clerk, office helper, and collator operator.  (*Id.*).  The role of office helper has a DOT Code of 239.567-010, is defined as unskilled with an SVP of 2, and defined as generally being performed at a light physical demand level with approximately 31,000 positions available in the national economy.  (*Id.*).  The role of collator operator has a DOT Code of 208.685-010, is defined as unskilled with an SVP of 2, and defined as generally being performed at a light physical demand level with approximately 51,000 positions available in the national economy.  (*Id.*).  The VE reduced the number of positions to 38,000 due to the hypothetical person's ability to only stand and walk for four hours.  (*Id.*).

The ALJ then altered the original hypothetical by including the condition that the individual would need to alternate between sitting and standing every 30 minutes.  (*Id.* at PageID.1000).  The VE testified the hypothetical individual would not be able to perform Plaintiff's past work.  (*Id.*).  However, the positions of mail clerk, office helper and collator operator would still be available.  (*Id.*).  The ALJ further narrowed this hypothetical by including a condition that the hypothetical individual would need to alternate between sitting and standing every 15 minutes.

(*Id.*).  The VE testified that such a person would still be able to perform the same jobs (i.e., mail clerk, office helper, and collator operator).  (*Id.* at PageID.1001).

The ALJ then again altered the original hypothetical by including the condition that the individual was only able to perform at the sedentary level.  (*Id.* at PageID.1001).  Such an individual would not be able to perform Plaintiff's past work but would be able to work as one of the following:

- Order clerk – DOT Code of 209.567-014, unskilled with an SVP of 2, and defined by the DOT as generally being performed at a sedentary physical demand level with approximately 40,000 positions available nationally.

- Document preparer – DOT Code of 249.587-018, unskilled with an SVP of 2, and defined by the DOT as generally being performed at a sedentary physical demand level with approximately 21,000 positions available nationally.

- Telephone quotation clerk – DOT Code of 237.367-046, unskilled with an SVP of 2, and defined by the DOT as generally being performed at a sedentary physical demand level with approximately 200,000 positions available nationally.

(*Id.* at PageID.1001–02).

In response to Plaintiff's questions, the VE confirmed that the positions of order clerk, document preparer, and telephone quotation clerk would require

16

someone to be able to look down or hold their head in a static position. (*Id.* at PageID.1003).  Further, the positions of marker, cashier, and mail clerk require an individual to look down and look around. (*Id.*).  And the position of office helper would require an individual to look down, look around, and hold their head in a static position. (*Id.*).

The VE confirmed that most of her testimony was consistent with the Dictionary of Occupational Titles ("DOT") and its companion the Selected Characteristics of Occupations ("SCO").  (*Id.* at PageID.1002).  However, her testimony regarding standard breaks, absenteeism, time off task, and the sit/stand option are not addressed by the DOT and SCO, and thus were based on her professional training and experience. (*Id.*).

**F.  Governing Law**

Since the instant application for benefits was filed on January 11, 2013, the former regulations apply. Under these rules, the ALJ must "consider all evidence" in the record when making a disability decision.  42 U.S.C. § 423(d)(5)(B). The regulations applicable to applications for disability benefits filed on or before March 26, 2017, distinguish between acceptable medical sources and other sources.  An acceptable medical source includes, among others, licensed physicians and licensed or certified psychologists.  20 C.F.R. 404.1513(a).  "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide

relevant evidence.  *Id.* § 404.1513(d).  Only "acceptable medical sources" can establish the existence of an impairment.  SSR 06-03p. 2006 WL 2329939, at \*2.  Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions."  *Id.* at \*2.  When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value.  20 C.F.R. § 404.1527.  Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC.  *Id.* at 404.1527 (d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources.  20 C.F.R. § 404.1527(c).  The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c).  ALJs must also apply those factors to "other source" opinions.  *See Cruse v. Comm'r of*

*Soc. Sec.*, 502 F.3d 532, 540–42 (6th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at **1–2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. *Id.* The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F. 3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the

19

> weight the adjudicator gave to the treating source's
> opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2,1996); *see also Rogers*, 486 F.3d at 242.

For example, an ALJ may properly reject a treating source opinion if it lacks

supporting objective evidence. *Revels v. Sec. of Health & Human Servs.*, 882 F.

Supp. 637, 640–41 (E.D. Mich. 1994), *aff'd* 51 F.3d 273,1995 WL 138930, at *1

(6th Cir. 1955).

An ALJ must analyze the credibility of the claimant, considering the

claimant's statements about pain or other symptoms with the rest of the relevant

evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996

WL 374186 (July 2, 1996).  Credibility determinations regarding a claimant's

subjective complaints rest with the ALJ.  *See Siterlet v. Sec'y of Health & Human

Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).  Generally, an ALJ's credibility

assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc.

Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Hammond

v. Halter*, 307 F.3d 377, 379 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375

F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating

subjective symptoms, including pain.  20 CFR § 404.1529; SSR 96-7p, 1996 WL

374186, at *2.  The ALJ evaluates complaints of disabling pain by confirming that

objective medical evidence of the underlying condition exists.  The ALJ then

determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

    (i)     [D]aily activities;

    (ii)    The location, duration, frequency, and intensity of . . . pain;

    (iii)   Precipitating and aggravating factors;

    (iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

21

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039–40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3.  Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant.  20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC.  The statute lays the groundwork for this, stating, "[a]n individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require."  42 U.S.C. § 423 (d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5.  The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record."  20 C.F.R. § 404.1545(a)(2).  A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five.  *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993);  *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

## G.  Argument and Analysis

In sum, Plaintiff argues the ALJ's decision was not supported by substantial evidence as the ALJ (1) created an RFC that was based on a misinterpretation of

Doctor Lazzara's opinion, and (2) erred in the assessment of the opinion of Plaintiff's treating rheumatologist.  (ECF No. 9, PageID.1218).

### 1.  The ALJ Properly Interpreted Doctor Lazzara's Opinion

Plaintiff argues that Doctor Lazzara's opinion stated she "was capable of, among other things, carrying[,] pushing[,] and pulling less than 20 pounds (**but not repetitively**)."  (*Id.*) (emphasis added).  Plaintiff argues the ALJ incorrectly read the opinion to mean "that the claimant can lift, push, and pull less than 20 pounds **repetitively** . . . ."  (*Id.* at PageID.1219 (citing ECF No. 4-1, PageID.957–58)).  This purportedly incorrect reading is significant because (1) if the ALJ's summary of a medical opinion is incorrect, the decision cannot be found to be based on substantial evidence, and (2) the misreading of Doctor Lazzara's opinion prompted the ALJ to conclude that Plaintiff could lift 20 pounds occasionally and up to 10 pounds frequently.  (ECF No. 4-1, PageID.1219).  Thus, if Plaintiff's reading of Doctor Lazzara's opinion is accepted the ALJ's "reasoning falls apart" as Plaintiff cannot lift up to 10 pounds frequently if she is unable to lift repetitively.  (*Id.* at PageID.1220).  This impairment, in addition to the standing and walking limitation included in Plaintiff's RFC, would result in her being limited to sedentary work, "which when combined with the borderline age rule, would have resulted in a finding of disability as of her Date Last Insured."  (*Id.* at PageID.1222).

The Commissioner counters that (i) Doctor Lazzara's opinion is silent as to "lifting" 20 pounds,[2] and (ii) "a limitation to carrying less than 20 pounds is consistent with the definition of light work, because light work requires carrying only 10 pounds frequently, not 20 pounds frequently." (ECF No. 11, PageID.1245). Further, the Commissioner argues the ALJ's interpretation of Doctor Lazzara's opinion was reasonable considering Doctor Lazzara's examination showed "full range of shoulder, elbow, wrist, and finger motion, as well as intact motor strength, normal muscle tone, intact sensation, and intact grip." (*Id.* at PageID.1246 (citing ECF No. 4-1, PageID.768–70)).  And such normal findings are "more in line with the ALJ's reasonable reading of Doctor Lazzara's opinion" than Plaintiff's interpretation.  (*Id.* at PageID.1246).

Snippets of the relevant portion of Doctor Lazzaro's medical notes are included below to aid in the analysis of this argument.

---

[2] The Commissioner's argument is correct as Doctor Lazzara's report does not mention Plaintiff's ability to lift.  (ECF No. 4-1, PageID.765–71).

EXHIBIT NO. 14F
PAGE: 2 OF 8

## NEUROLOGIC AND ORTHOPEDIC SUPPLEMENTAL REPORT

1.   <u>CURRENT ABILITIES</u> – Based on your objective examination, can the patient:

| | Yes | No | Comments |
|---|---|---|---|
| Sit | ✓ | | |
| Stand | ✓ | | 4°/8° |
| Bend | ✓ | | ccas |
| Stoop | ✓ | | occas |
| Carry | ✓ | | c 2c |
| Push | ✓ | | ∧  prepith |
| Pull | ✓ | | |
| Button Clothes | ✓ | | |
| Tie Shoes | ✓ | | |
| Dress-Undress | ✓ | | |
| Dial Telephone | ✓ | | |
| Open Door | ✓ | | |
| Make a Fist | ✓ | | |
| Pick Up Coin | ✓ | | |
| Pick Up Pencil | ✓ | | |
| Write | ✓ | | |
| Squat & Arise from Squatting | ✓ | | ccas |
| Get On & Off Examining Table | ✓ | | |
| Climb Stairs | ✓ | | |
| Adiadochokinesis | ✓ | | |
| Finger to Finger | ✓ | | |
| Finger to Nose | ✓ | | |
| Heel - Shin | ✓ | | |

(ECF No. 4-1, PageID.765).

### NEUROLOGIC AND ORTHOPEDIC SUPPLEMENTAL REPORT

<u>CURRENT ABILITIES</u> – Based on your objective examination, can the patient:

|  | Yes | No | Comments |
|---|---|---|---|
| Sit | ✓ | | |
| Stand | ✓ | | 4°/30 |
| Bend | ✓ | | occas |
| Stoop | ✓ | | occas |
| Carry | ✓ | | <20 |
| Push | ✓ | | ∧ / repit |
| Pull | ✓ | | ɩ / |
| Button Clothes | ✓ | | |

(*See id.*).   There is no question as to whether the term "repetit," included in the

medical note above, is meant to communicate the word "repetitively" in regard to

Plaintiff's ability to carry, push, and pull.  It is the meaning of the symbol included

before repetitively at issue.  But close investigation of the medical note shows that

despite Plaintiff's position, the notation included before the term "repitit" does not

appear to be the symbol for the term "not" and thus it was reasonable for the ALJ to

arrive at the same conclusion.  The symbol for "not" is used throughout the medical

file by other providers and comprises of a slash placed through a circle as reflected

below.

26

Each iteration of the symbolic "not" is demonstrated by a single circle and clean slash placed through it.  Despite Plaintiff's position, Doctor Lazzaro's questionable symbol is a far cry from what would be considered the symbolic "not." (ECF No. 4-1, PageID.765).

Even, assuming *arguendo* that Doctor Lazzaro's notation does communicate "not repetitively" a misreading of this notation alone does not warrant remand as Doctor Lazzara's additional medical notes support the ALJ's reading.  *See Zerbst v. Comm'r of Soc. Sec.*, No. 2015 WL 1439701, 2015 WL 1439701, at *7 (E.D. Mich.

27

Mar. 24, 2015) (the ALJ's misinterpretation of the doctor's GAF score alone does not constitute reversible error).  Plaintiff's reading of the medical note contradicts Doctor Lazzaro's additional physical examination notes which indicate her (i) grip strength remained intact, (ii) dexterity (i.e., ability to perform tasks with her hands) was unimpaired, (iii) motor strength was intact, (iv) muscle tone was normal, and (v) shoulder, elbow, wrist and finger ranges of motion were normal.  (*Id.* at PageID.768–70).  The inclusion of these additional factors in the medical notes support the ALJ's finding "that the claimant can lift, push, and pull less than 20 pounds repetitively" is supported by the record.  (*Id.* at PageID.957–58).  As this conclusion is supported by substantial evidence, the ALJ's ultimate finding that Plaintiff is capable of light work is supported and reasonable.  And while evidence supporting the notation that Plaintiff cannot lift or carry anything over 10 pounds exists, the standard is not whether contrary evidence exists but rather if the ALJ's findings are supported by substantial evidence.  (*Id.* at PageID.321); *Cutlip*, 25 F.3d at 286; *Rogers*, 486 F.3d at 241.

Last, Plaintiff's contention that she should be limited to sedentary work "which when combined with the borderline age rule, would have resulted in a finding of disability as of her Date Last Insured," is not supported by the record as discussed above.  (ECF No. 4-1, PageID.1222); *Mirabal v. Barnhart*, No. 04-983 ACT, 2005 WL 8164170, at *6 (D.N.M. May 26, 2005) (finding the "Grid rules for light work

28

direct a finding of non disabled" as the record supports the ALJ's finding that the plaintiff can perform light work with additional limitations).

### 2. The ALJ Properly Interpreted Doctor Malani's Opinion

Plaintiff argues the ALJ failed to afford the appropriate weight[3] to Doctor Malani's, Plaintiff's treating physician, opinion.   (ECF No. 9, PageID.1222). Plaintiff focuses on Doctor Malani's opinion that Plaintiff "would rarely be [able] to look down, up, to the side, or hold her head in a static position," and contends that if Doctor Malani's opinion were adopted by the ALJ it would have eliminated all the jobs identified by the VE.  (*Id.* at PageID.1222–23, 26).

The Commissioner counters that Plaintiff's argument should be rejected as the ALJ accepted Plaintiff's fibromyalgia as a severe impairment but "went on to determine whether objective medical evidence substantiated Plaintiff's claims in assessing her functional limitations." (ECF No. 11, PageID.1250).  And the ALJ appropriately gave the opinion no weight because Doctor Malani's treatment records did not reflect the objective findings Doctor Malani described in her opinion (e.g., lack of evidence to support limitation for either neck mobility or standing and walking).  (*Id.* at PageID.1252–54).

---

[3] Plaintiff's application was filed in January 2013 and thus the Agency's prior regulations at 20 C.F.R. § 404.1527 govern the evaluation of the medical opinion in this case. *See* 20 C.F.R. § 404.1527c.

The opinion of a treating physician should be accorded greater weight than that of a consultative physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529–30 (6th Cir. 1997).  A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with the record.  20 C.F.R. § 404.1527(d)(2).  "The ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation," or where there is substantial evidence to the contrary.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citation and internal quotation marks omitted); *Loy v. Sec'y of Health and Human Servs.*, 901 F.2d 1306, 1308 (6th Cir. 1990) (citation omitted).

Plaintiff takes issue with the following finding by the ALJ:

> Upon her examination at the time that the above opinion was issued, Doctor Malani observed that the claimant had normal ambulation; normal motor strength and tone; no contractures, malalignment, synovitis, or bony abnormalities; movement of all her extremities; and no edema. These normal findings are not consistent with and do not support the limitations described in her opinion. **There is no evidence that the claimant had a cervical spine impairment or that her symptoms would have caused such limitations in turning her head, looking up or down, or even holding her head static**, as Doctor Malani indicated.

(ECF No. 4-1, PageID.965) (emphasis added) (internal citations omitted).  She argues that the ALJ's reliance on a lack of objective evidence runs afoul of both SSR

12-2p and caselaw regarding the evaluation of fibromyalgia. (*Id.* at PageID.1223). I will address each argument in turn starting with SSR 12-2p.

Plaintiff contends that as to SSR 12-2p, the ALJ failed to address the other factors (i.e., the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms, the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms) when assessing Doctor Malani's opinion regarding Plaintiff's ability to turn her head. (ECF No. 9, PageID.1223 (citing SSR 12-2p, 2012 WL 3104869, at *5 (July 25, 2012)). In sum, the ALJ's failure to "reference any subjective findings when assessing Doctor Malani's opinion regarding Plaintiff's ability to use her neck" renders his decision to afford the opinion no weight improper and warrants remanding the case. (ECF No. 9, PageID.1225–26).

First, while the ALJ did not reference Plaintiff's subjective findings when discussing Doctor Malani's opinion regarding Plaintiff's ability to use her neck, the subjective findings were referenced throughout the decision. (ECF No. 4-1, PageID.953). Specifically, when discussing Plaintiff's RFC the ALJ outlines the symptoms Plaintiff described experiencing: extreme fatigue, headaches, weakness, lower extremity pain with walking or standing, lightheadedness, joint pain, muscle pain, morning stiffness, difficulty concentrating, difficulty sleeping, irritable bowel, dizziness, anxiety, memory problems, and restless legs. (*Id.* at PageID.953, 954).

These symptoms include those Plaintiff mentioned to Doctor Malani (e.g., fatigue, pain, weakness, dismiss, muscle aches, morning stiffness, and joint pain).  (ECF No. 9, PageID.1255 (citing ECF No. 4-1, PageID.294, 297, 299)).  Settled caselaw holds that an ALJ is not required to explicitly discuss all of the medical evidence in the record.  *Piers v. Comm'r of Soc. Sec.*, No. 1:15-CV-0242, 2016 WL 1178105, at *3 (W.D. Mich. Mar. 28, 2016) ("While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that: 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.  Nor must an ALJ make explicit creditability findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.") (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006)); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) ("[A]n ALJ is not required to discuss all the evidence submitted and an ALJ's failure to cite specific evidence does not indicated that it was not considered." (citation omitted)).  Taking this a step further, ALJ's are most certainly not required to repeatedly discuss the same medical evidence (e.g., subjective complaints, symptoms, or findings) in each section of their decision where they address a different physician's medical opinion.

Second, Plaintiff fails to identify what subjective findings as to Plaintiff's ability to use her neck the ALJ was required to reference when assessing Doctor

Malani's opinion.  Based on a review of the record, there were no additional subjective findings to assess.  In fact, the subjective findings contained in the record undercut Plaintiff's argument and Doctor Malani's representation that Plaintiff is limited in this sense.  In her function report, Plaintiff admits that she drives at least twice a week, walks the dog, and periodically cooks.  (ECF No. 4-1, PageID.800, 981–82, 991–93).  In order to drive or walk a dog safely, an individual is required to be able to look down and/or around, and failing to do so could result in dire consequences.  The record further demonstrates that during the relevant time period Plaintiff had no issues bathing, dressing, or performing other personal care tasks, conducting a bit of laundry, and periodically went grocery shopping.  (*Id.* at PageID.680–81).  The ALJ's decision also noted that Plaintiff elected to stop taking medication for her fibromyalgia and instead sought to manage her symptoms with other forms of treatment.  (*Id.* at PageID.954).  Plaintiff's own subjective statements, as discussed herein, undercut Doctor Malani's assessment that she can rarely look down, turn her head right or left.  (*Id.* at PageID.349).  Moreover, neither Plaintiff's record nor her brief include references to difficulty with looking down and/or around.  As Dr. Malani's opinion is not supported by her underlying objective findings, Plaintiff's subjective complaints, or other medical evidence in the record, it was appropriate for the ALJ to afford her "no weight."  *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992); *Cutlip*, 25 F.3d at 286–87.

33

### H.  Conclusion

For these reasons, I would conclude that substantial evidence supports the Commissioner's denial of benefits, and I recommend **DENYING** Plaintiff's motion, (ECF No. 9), **GRANTING** the Commissioner's motion, (ECF No. 11), and **AFFIRMING** the Commissioner's final decision.

### III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1.) Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981.) The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d.) The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 21, 2024                    **S/PATRICIA T. MORRIS**
                                           Patricia T. Morris
                                           United States Magistrate Judge